# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA         ) | |
| ) | |
| ) | |
| v.                               ) | Criminal No. 1:22-cr-180 |
| ) | |
| HERBERT MURILLO-LOPEZ,           ) | |
| **Defendant.**                   ) | |

### MEMORANDUM OPINION

At issue in this prosecution of Defendant Herbert Murillo-Lopez for unlawful possession of a firearm and ammunition by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A), is defendant's Motion to Suppress Evidence (Dkt. 20). In the Motion, defendant seeks to suppress evidence seized during—and statements made after—a traffic stop that resulted in defendant's arrest. Specifically, defendant seeks to suppress (1) the firearm and any other evidence seized during the at-issue traffic stop and (2) statements made following the traffic stop.[1] An evidentiary hearing was held on November 18, 2022, at which the government presented a single witness: Deputy United States Marshal Timothy Alley, the case agent in this matter and one of the officers who participated in the traffic stop at issue. The parties submitted briefs both before the evidentiary hearing and after following evidentiary hearing. Accordingly, the Motion to Suppress has been fully briefed and is now ripe for disposition. For the reasons that follow, defendant's Motion to Suppress must be denied.

---

[1] Although the Motion to Suppress seeks to suppress statements made after the traffic stop, counsel for defendant has stated in her brief that she is not presently aware of any such statements made by defendant that would be subject to suppression. And although defendant did make statements *during* the traffic stop, defendant has not challenged any of these statements and defendant's counsel admitted at the evidentiary hearing that there was no improper questioning by Deputy Marshal Alley during the stop. *See* November 18, 2022 Tr. at 76:6-8.

1

**I.**

The following bulleted statement of facts is based on the testimony of Deputy Marshal Alley, who testified at the November 18, 2022 evidentiary hearing, as well as the body camera footage of a portion of the traffic stop from another member of the warrant task force. Deputy Marshal Alley's testimony was clear, cogent, and credible, and established the following facts:

- On August 24, 2022, a warrant task force consisting of Virginia police officers and Deputy United States Marshals—including Deputy Marshal Alley—sought to execute an arrest warrant for the arrest of a man named Jose Torres Cruz.[2] The warrant that the task force was seeking to execute charged Jose Torres Cruz with armed robbery.

- The members of the warrant task force, including Deputy Marshal Alley, were advised that Jose Torres Cruz, the person named on the arrest warrant, was a member of MS–13: a violent criminal gang.

- Deputy Marshal Alley was aware (i) that MS–13 is a violent criminal gang, (ii) that members of MS–13 typically travel with other MS–13 members, (iii) that MS–13 members often carry weapons and are considered armed and dangerous.

- The warrant task force, including Deputy Marshal Alley, had information that, on August 24, 2022, Jose Torres Cruz was located at one of a few specific residences—all located on the same block—in Sterling, Virginia. Deputy Marshal Alley and other members of the warrant task force conducted surveillances of these residences on August 24, 2022.

- At some point during the warrant task force's surveillance of the Sterling residences, two or three people exited one of the residences and drove away in a Ford Explorer, which was the same Ford Explorer that the warrant task force eventually stopped.

- Deputy Marshal Alley testified that at least one of the two or three people observed to be exiting one of the Sterling residences and driving away in the Ford Explorer matched the description of the man who was the subject of the arrest warrant: Jose Torres Cruz, a Hispanic Male with short black hair.

- Deputy Marshal Alley and other members of the warrant task force followed the Ford Explorer to a nearby 7-Eleven in Sterling. At the 7-Eleven, Deputy Marshal Alley saw another vehicle—a Honda Accord—and observed a total of five occupants from the Ford Explorer and the Honda Accord going back and forth between the two vehicles. Defendant settled in the driver's seat of the Ford Explorer.

---

[2] The parties' briefing and the incident report refer to "Jose Cruz Torres," but the testimony at the evidentiary hearing referred to "Jose Torres Cruz." In any event, it is clear that both references are to the same individual who was the subject of the arrest warrant for armed robbery.

- Shortly thereafter, the two vehicles left the 7-Eleven, with one vehicle following the other.

- The Ford Explorer and the Honda Accord then arrived at a nearby Sunoco gas station in Sterling, Virginia. The windows of the Ford Explorer were rolled down.

- Deputy Marshal Alley and the other members of the warrant task force conducted a traffic stop of the Ford Explorer at the Sunoco gas station in furtherance of locating and arresting Jose Torres Cruz: Deputy Marshal Alley activated his vehicle's emergency lights, positioned his car to block the Ford Explorer from driving away, and approached the Ford Explorer while wearing "police" or "marshal" insignia and carrying a holstered sidearm. This traffic stop occurred in the middle of the day at the Sunoco gas station. Deputy Marshal Alley testified that, at this point, defendant was not free to leave. Members of the warrant task force also conducted a traffic stop of the Honda Accord.

- When Deputy Marshal Alley approached the Ford Explorer, he observed two people in the vehicle: one person in the driver's seat and one person immediately behind the driver.

- The person in the driver's seat matched the description of Jose Torres Cruz—the individual wanted for armed robbery—because he was a Hispanic male with short black hair. Deputy Marshal Alley later learned that the person in the driver's seat was the defendant in this case: Herbert Murillo-Lopez. But at the time of the traffic stop, Deputy Marshal Alley suspected that the driver of the Ford Explorer might be Jose Torres Cruz, the subject of the arrest warrant.

- Deputy Marshal Alley asked defendant and the other person in the vehicle, both in English and in Spanish, whether either of them had any identification. They both said "no."

- Deputy Marshal Alley then asked defendant, in English, if he was a citizen, and defendant said "no."

- Because defendant responded in English to questions asked only in English, it is clear that defendant understood and spoke some English and understood Deputy Marshal Alley's questions.

- Deputy Marshal Alley was not wearing a body camera, but another officer in the warrant task force was wearing a body camera and approached Deputy Marshal Alley at this time.

- Although Deputy Marshal Alley developed a rapport with defendant and observed that defendant was acting calmly, objective factors nonetheless indicated that defendant may be armed and dangerous. First, defendant may have been Jose Torres Cruz. Second, because MS–13 members often travel with other MS–13 members, and because at least one of the five people stopped at the Sunoco gas station matched Jose Torres Cruz's description, defendant may have been an MS–13 member traveling with Jose Torres Cruz.

- Deputy Marshal Alley also observed that defendant was wearing a cross-body satchel tightly affixed to defendant's body. But the satchel appeared to be sagging forward, indicating that the satchel contained a heavy object.

3

- Because Deputy Marshal Alley had reason to believe that defendant may be armed and dangerous, Deputy Marshal Alley asked defendant, in English, if Deputy Marshal Alley could feel the satchel. Defendant responded, in English, "yes."

- Deputy Marshal Alley then conducted a pat-down of the satchel and, in doing so, Deputy Marshal Alley felt a gun-shaped object.

- After feeling the gun-shaped object in the satchel, Deputy Marshal Alley asked defendant, in English, if Deputy Marshal Alley could look inside the satchel. Defendant responded, in English, "yes," and handed the satchel to Deputy Marshal Alley.

- Deputy Marshal Alley opened the satchel, saw a gun, and ordered the defendant to exit the vehicle. Defendant was then placed in handcuffs and arrested.

- After defendant was in handcuffs, an officer with a biometric machine arrived and informed Deputy Marshal Alley that, as it turned out, defendant was not Jose Torres Cruz. One of the other four people involved in the traffic stop, however, was Jose Torres Cruz.

## II.

Defendant contends that the firearm recovered during the August 24, 2022 encounter, and any statements made thereafter, must be suppressed for two reasons. First, defendant argues that he was unlawfully seized because there was no reasonable, articulable suspicion sufficient to authorize a traffic stop. Next, defendant argues that Deputy Marshal Alley's pat-down, and eventual search, of defendant's satchel was unlawful because Deputy Marshal Alley lacked reason to believe that defendant was armed and dangerous.

## A.

Defendant's first argument—that defendant was unlawfully seized—depends upon two sub-arguments. First, for defendant to have been unlawfully seized, he must have, in fact, been seized. Second, the seizure must be unlawful.

It is clear that defendant was seized. In this regard, Deputy Marshal Alley testified that he (i) activated his emergency lights and (ii) blocked the Ford Explorer from leaving the scene, two facts which, according to the Fourth Circuit's decision in *United States v. Stover*, indicate to a defendant that he is not free to leave and therefore has been seized. 808 F.3d 991, 997 (4th Cir.

4

2015). Accordingly, defendant was seized at the Sunoco gas station.

This does not end the analysis, for the facts demonstrate that there was reasonable, articulable suspicion for the warrant task force to stop the Ford Explorer and its driver pursuant to *Terry v. Ohio*, 392 U.S. 1, 30 (1968), which held that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Although the *Terry* standard requires more than an inchoate and unparticularized suspicion or hunch of criminal activity, reasonable, articulable suspicion exists "when law enforcement officers possess a particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Singh*, 363 F.3d 347, 355 (4th Cir. 2004). Whether such an objective basis for suspicion exists depends on the totality of the circumstances. *United States v. Glover*, 662 F.3d 694, 698 (4th Cir. 2011). Those circumstances include the facts known by the officers and the reasonable inferences warranted by those facts. *United States v. Hernandez-Mendez*, 626 F.3d 203, 207-08 (4th Cir. 2010). Even wholly lawful conduct may engender a reasonable suspicion of criminal activity. *United States v. Sokolow*, 490 U.S. 1, 8 (1989).

The facts presented here are not novel; the Fourth Circuit has previously addressed similar facts and found reasonable, articulable suspicion to exist and justify a traffic stop. In *United States v. Bugg*, law enforcement officers were attempting to arrest a fugitive with a violent criminal history. 561 F. App'x 248, 249 (4th Cir. 2014). The law enforcement officers surveilled an apartment where the fugitive was thought to be located. *Id.* A vehicle approached the apartment and, apparently noticing the police presence, fled the scene. *Id.* The law enforcement officers followed the vehicle and, after noticing that the vehicle's driver matched the fugitive's description,

conducted a traffic stop of the vehicle. *Id.* Although the driver of the vehicle was not the fugitive, the Fourth Circuit concluded that the law enforcement officers possessed reasonable, articulable suspicion and that the traffic stop was lawful. *Id.* at 251. Similarly, in *United States v. Holmes*, the Fourth Circuit held that the relevant inquiry for Fourth Amendment purposes is law enforcement officers' initial suspicion that a passenger in the vehicle was a dangerous gang member, even if it later turns out that the passenger was not a dangerous gang member. 376 F.3d 270, 277-78 (4th Cir. 2004).

The facts of this case fall well within *Bugg* and *Holmes*. Here, Deputy Marshal Alley and the other members of the warrant task force possessed reasonable, articulable suspicion to stop the Ford Explorer. At the time of the seizure, members of the warrant task force were searching for an individual—Jose Torres Cruz—pursuant to an arrest warrant. The members of the warrant task force also (i) knew that the arrest warrant charged Jose Torres Cruz with armed robbery and (ii) had information that Jose Torres Cruz was a member of MS–13, a violent criminal gang. And the members of the warrant task force possessed information that Jose Torres Cruz was located at one of a few specific addresses in Sterling, Virginia that the members of the warrant task force were surveilling.

The warrant task force members began to follow the Ford Explorer only when they saw two or three people, at least one of whom fit Jose Torres Cruz's description, exit one of the Sterling residences and drive away in the Ford Explorer. The warrant task force officers followed the Ford Explorer to a 7-Eleven, where occupants from the Ford Explorer and the Honda Accord freely moved back and forth between the two vehicles. When the Ford Explorer and the Honda Accord left together, the warrant task force followed both vehicles to a Sunoco gas station where the at-issue traffic stop occurred. Given this history—(i) about Jose Torres Cruz's outstanding warrant

and MS–13 membership; (ii) that the Ford Explorer left from a house in which Jose Torres Cruz was thought to reside; and (iii) that the driver of the Ford Explorer fit Jose Torres Cruz's description—the officers certainly possessed reasonable, articulable suspicion that Jose Torres Cruz was in the Ford Explorer and thus possessed the authority to conduct a traffic stop of the Ford Explorer and its occupants.

Seeking to avoid this conclusion, defendant raises three arguments, none of which is persuasive. First, defendant contends that Deputy Marshal Alley and the other members of the warrant task force observed no illegal conduct by defendant or his passenger in the Ford Explorer before conducting the traffic stop. But the Fourth Circuit has made clear in *United States v. Perkins* that "[o]fficers are not required" to observe specific "illegal activity in order to make investigative stops." 363 F.3d 317, 326 (4th Cir. 2004). Rather, as the Fourth Circuit noted, "the very point of *Terry* was to permit officers to take preventive action and conduct investigative stops . . . based on what they view as suspicious—albeit even legal—activity." *Id.* Thus, as the Fourth Circuit concluded in *Perkins*, "the mere fact that particular conduct may be susceptible of an innocent explanation does not establish a lack of reasonable suspicion." *Id.* at 327. That Deputy Marshal Alley did not observe defendant engaging in illegal conduct does not preclude the conclusion that the traffic stop was lawful.

Second, defendant argues that the fact that defendant fit Jose Torres Cruz's description cannot add to the officer's reasonable suspicion because the description of Jose Torres Cruz—a Hispanic male with black hair cut short—was too generic and would permit police officers to seize numerous individuals. This argument fails. The Fourth Circuit has previously held that descriptions as—or even more—generic than the one here in issue can properly contribute to an officer's reasonable, articulable suspicion. For example, in *Humbert v. Mayor and City Council*

7

*of Baltimore City*, the Fourth Circuit noted that officers equipped with "a generic physical description" of a suspect—a five-foot, seven-inches tall "African-American male in his late 30s to early 40s who was fairly well-spoken"—possessed reasonable suspicion to stop "an individual who closely resembles that description." 866 F.3d 546, 560-61 (4th Cir. 2017). And in *Perkins*, a description of "white males in a red car bearing a silver or white stripe" justified an officer's stop of a "red car with a silver or white stripe" containing "two white males." 363 F.3d at 322.

      To be sure, officers would not be authorized to conduct a stop of anyone who matches the generic physical description of a suspect; the stop must occur close to where the suspect is thought to be located such that "a substantial portion of innocent" drivers are eliminated as suspects. *United States v. Brugal*, 209 F.3d 353, 359 (4th Cir. 2000). So, of course, the warrant task force officers here would not have been permitted to stop any vehicle anywhere in the Commonwealth driven by a Hispanic male with black hair cut short. But here, the warrant task force (i) surveilled the residences in Sterling in which an MS–13 member who was the subject of an arrest warrant for a violent crime was thought to be located; (ii) saw two to three people exit from one of the residences under surveillance and drive away in a Ford Explorer, at least one of whom matched the description of the MS–13 member who was the subject of the arrest warrant; and (iii) stopped that Ford Explorer in Sterling, Virginia. The warrant task force and Deputy Marshal Alley thus possessed sufficient corroborating information *beyond* Jose Torres Cruz's physical description that led them to believe that Jose Torres Cruz was in the Ford Explorer.

      Finally, defendant argues that Deputy Marshal Alley and the rest of the warrant task force had not, prior to stopping the Ford Explorer, (i) confirmed that Jose Torres Cruz was among the individuals who left the residences in Sterling, Virginia or (ii) confirmed that Jose Torres Cruz was in the Ford Explorer. But the Fourth Circuit has held that officers may lawfully stop a vehicle

8

when the stopped vehicle contains a person who matches the description of a wanted individual, even if the wanted individual is not the one driving the vehicle, and even if the officers end up being mistaken about whether the person seized is actually the wanted individual. *See United States v. Bugg*, 561 F. App'x 248, 251 (4th Cir. 2014). Thus, defendant's third argument in opposition to the traffic stop has been rejected by the Fourth Circuit.

In sum, the totality of the circumstances here—that the warrant task force, including Deputy Marshal Alley (i) surveilled the residences in which an MS–13 member who was the subject of an arrest warrant for a violent crime was thought to be located; (ii) saw two to three people, at least one of whom matched the description of the MS–13 member who was the subject of the arrest warrant, exit from one of the residences under surveillance and drive away in a Ford Explorer; and (iii) stopped the Ford Explorer driven by defendant, who matched the description of the MS–13 member who was the subject of an arrest warrant—conferred upon the warrant task force reasonable, articulable suspicion to conduct the at-issue traffic stop. Defendant's arguments to the contrary fail.

## B.

Defendant's second argument in support of his Motion to Suppress is that Deputy Marshal Alley's pat-down, and eventual search, of defendant's cross-body satchel was unlawful because Deputy Marshal Alley lacked reasonable suspicion that defendant was armed and dangerous. It is necessary to consider the events separately: first, the pat-down of the satchel, and second, the search of the satchel.

### The Pat-Down

The legal principles governing the legality of the pat-down are well-settled. A law officer during a lawful *Terry* stop "may protect himself . . . by conducting a search for weapons if he 'has

reason to believe that the suspect is armed and dangerous.'" *United States v. Burton*, 228 F.3d 524, 528 (4th Cir. 2000) (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)). To be sure, a belief that the suspect is armed and dangerous must be "reasonable" and must be "based on specific and articulable facts . . . taken together with the rational inferences from those facts." *United States v. Baker*, 78 F.3d 135, 137 (4th Cir. 1996). Notably, the inquiry is objective, and turns "not on the officer's actual state of mind at the time the challenged action was taken" but rather on "an objective assessment" of the officer's actions. *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) (citations omitted). And "reasonable suspicion of a suspect's dangerousness need not be based solely on activities observed by the police during or just before the relevant police encounter, but can be based on the suspect's commission of violent crimes in the past." *United States v. Holmes*, 376 F.3d 270, 278 (4th Cir. 2004). And particularly pertinent here, the Fourth Circuit has noted that "the appearance of something heavy" in a person's pocket or bag can suggest that the person "might be carrying a gun." *United States v. Mayo*, 361 F.3d 802, 807 (4th Cir. 2004). Also pertinent is the Fourth Circuit's conclusion that an officer has reason to believe that the occupants of a vehicle may be armed and dangerous when the officer believes that one occupant is "a member of a gang whose members had carried out numerous violent felonies while armed." *Holmes*, 376 F.3d at 277. And notably, this conclusion is warranted even if the officer, in the end, is mistaken about the gang membership of the vehicle's occupants. *See id.*

Here, the record clearly reflects that Deputy Marshal Alley had ample reason to believe that defendant was armed and dangerous at the time of the traffic stop and therefore the pat-down of defendant's cross-body satchel was lawful. First, Deputy Marshal Alley testified that that the satchel was affixed tightly to defendant's body, but was sagging forward, indicating that the satchel contained a heavy object. As the Fourth Circuit has recognized, this "appearance of something

10

heavy" in a bag makes it reasonable for an officer, such as Deputy Marshal Alley, to infer that a defendant "might be carrying a gun." *See Mayo*, 361 F.3d at 807. Second, as discussed *supra* with regard to the traffic stop, Deputy Marshal Alley had reason to believe that defendant was a member of the notorious criminal gang MS–13[3] and was wanted for armed robbery. In these circumstances, the Fourth Circuit has recognized that an officer has reason to believe that a person may be armed and dangerous. *Holmes*, 376 F.3d at 278. Accordingly, the record facts in this case reflect that Deputy Marshal Alley had ample reason to believe that defendant may have been Jose Torres Cruz, an MS–13 member who was wanted for a violent crime, and therefore that defendant was armed and dangerous.

Defendant disagrees and contends that, for two reasons, the facts do not reasonably lead to the conclusion that defendant may have been armed and dangerous. First, defendant argues that Deputy Marshal Alley did not subjectively believe that defendant was armed and dangerous. To begin with, however, Deputy Marshal Alley's subjective belief in this regard is irrelevant. Indeed, as the Fourth Circuit has made clear, the "armed and dangerous" inquiry is objective, and turns "not on the officer's actual state of mind at the time the challenged action was taken" but rather on "an objective assessment" of the officer's actions. *Branch*, 537 F.3d at 337 (citations omitted). Moreover, defendant, in making this argument, has taken Deputy Marshal Alley's testimony out of context. Although Deputy Marshal Alley's testified that he developed a rapport with defendant and observed that defendant was acting calmly, Deputy Marshal Alley also stated that objective factors, such as the fact that defendant may have been an MS–13 member and may have been Jose

---

[3] The violent nature of MS–13 cannot be overstated. The Fourth Circuit has noted that MS–13 "is one of the largest and most violent street gangs in the United States" and that its members "are required to attack and, if possible, kill rival gang members whenever they see them." *United States v. Ayala*, 601 F.3d 256, 261 (4th Cir. 2010). Indeed, one of MS–13's mottos is "mata, viola, controla," which means "kill, rape, control." *Id.*

Torres Cruz, warranted the suspicion that defendant may be armed and dangerous. Defendant's contention about Deputy Marshal Alley's testimony is therefore unsupported when the record is viewed in full. Thus, Deputy Marshal Alley's statement about his subjective belief is irrelevant to whether there was a reasonable basis to believe that defendant was armed and dangerous.

Second, defendant argues that Deputy Marshal Alley did not know for certain that Jose Torres Cruz was in the Ford Explorer, and that it was therefore inappropriate to believe that anyone in the vehicle was armed and dangerous. This argument is incorrect. As the Fourth Circuit has made clear, an officer has reason to believe that a person may be armed and dangerous when they have "*reason to believe*" that person is "a member of a gang whose members have carried out numerous violent felonies while armed" and that the person is the subject of an arrest warrant for a crime of violence. *Holmes*, 376 F.3d at 277-78 (emphasis added). Put simply, officers need not confirm active gang membership of a suspect before concluding that the suspect may be armed and dangerous; officers, as here, need only have some reason to believe that the suspect is a gang member and may be armed and dangerous.

Even assuming, *arguendo*, that there was no reason to believe that defendant was armed and dangerous, the pat-down of the satchel was lawful because the defendant consented to the pat-down. Valid "consent is a well-recognized exception" to the Fourth Amendment's protections. *United States v. Neely*, 564 F.3d 346, 349-50 (4th Cir. 2009). In this regard, Deputy Marshal Alley testified that he asked defendant, in English, if Deputy Marshal Alley could touch the satchel and defendant responded, in English, "yes." This is a clear case of consent being sought by a law enforcement officer and consent being given by a suspect.

Defendant contends otherwise. First, defendant argues that the collective actions of the warrant task force amounted to a total and complete show of authority such that defendant's

consent was not "in fact voluntary" and was instead the "product of duress or coercion, express or implied." *United States v. Mendenhall*, 446 U.S. 544, 557 (1980). The question of whether consent is voluntary must be answered by looking to "the totality of all the circumstances." *Id.* And in considering the totality of the circumstances, courts must consider both "the characteristics of the accused," such as the accused's age, and "the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." *United States v. Elie*, 111 F.3d 1135, 1144 (4th Cir. 1997) (citation omitted).

Although defendant is young (apparently 28 years old), when the totality of the circumstances is considered, more weight must be given to the conditions under which the consent to search was given, as the Supreme Court did in *Mendenhall*. *See* 446 U.S. at 557-58. Here, the conditions under which defendant consented indicate defendant's consent was voluntary. First, Deputy Marshal Alley *asked explicitly* if he could touch the satchel, and defendant *answered explicitly* "yes." Second, the Fourth Circuit has made clear that where, as here, an encounter occurs in a public place, in the "middle of the afternoon" and is "not of inordinate duration," consent is voluntary. *See Elie*, 111 F.3d at 1145. Finally, present at the traffic stop here were far fewer than six officers, a number of officers which the Fourth Circuit has indicated does not by itself create a coercive environment. *See id.* Accordingly, the totality of the circumstances indicates that defendant's consent to the search was voluntary.

Defendant next argues that he does not speak English and thus could not meaningfully consent to the pat-down. Yet the record makes clear that defendant does speak some English. Defendant heard, understood, and responded in English to questions asked only in English by Deputy Marshal Alley. As the Fourth Circuit recognized in *United States v. Ramirez*, a defendant

13

validly consents to a pat-down or a search when, as here, (i) the defendant is asked, in English, if he consents to the pat-down or search, (ii) the defendant indicates that he does, and (iii) the officer perceives no language problems. 29 F. App'x 111, 114 (4th Cir. 2002). Thus, defendant's argument that he did not speak English and thus did not meaningfully consent to the pat-down is not supported by the record and has been rejected by the Fourth Circuit.

Finally, defendant argues that Deputy Marshal Alley had already started to pat-down the satchel when defendant consented. But the record of the evidentiary hearing, examined as a whole, belies defendant's argument. To be sure, Deputy Marshal Alley testified that he asked "[w]hat's in this" while his hand was already in the vehicle. Tr. at 52:1-7. But Deputy Marshal Alley also testified that this was not his first time asking for consent; Deputy Marshal Alley had asked defendant for consent before placing his hand into the vehicle. Tr. at 51:2-8. It is clear from the record, then, that Deputy Marshal Alley sought consent prior to touching defendant's satchel.

In sum, Deputy Marshal Alley's pat-down of defendant's satchel was wholly lawful. First, an objective analysis indicates that Deputy Marshal Alley had reason to believe that defendant was armed and dangerous. Second, defendant, in any event, plainly consented to the pat-down. Thus, defendant's Fourth Amendment rights were not violated when Deputy Marshal Alley conducted a pat-down of the satchel and felt a gun-shaped object.

### The Search

The next event that defendant challenges as unlawful is Deputy Marshal Alley's search of defendant's satchel. The standard for such a search is well-settled: once again, during a lawful *Terry* stop, an officer "may protect himself . . . by conducting a search for weapons if he 'has reason to believe that the suspect is armed and dangerous.'" *United States v. Burton*, 228 F.3d 524, 528 (4th Cir. 2000) (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)). Such a belief

that the suspect is armed and dangerous must be "reasonable" and must be "based on specific and articulable facts . . . taken together with the rational inferences from those facts." *United States v. Baker*, 78 F.3d 135, 137 (4th Cir. 1996).

Here, Deputy Marshal Alley possessed reason to believe that defendant was armed and dangerous. While lawfully patting down defendant's satchel, *see supra*, Deputy Marshal Alley felt a gun-shaped object. Given that Deputy Marshal Alley felt a gun-shaped object, his suspicion that defendant may be armed and dangerous was strongly reinforced. Thus, Deputy Marshal Alley's search of the satchel was justified under the Fourth Amendment.

In any event, defendant also consented to Deputy Marshal Alley's search of defendant's satchel. The record on this point is clear: Deputy Marshal Alley, after patting down the satchel, asked defendant, in English, if Deputy Marshal Alley could look inside the bag, and defendant responded, in English, "yes." For the reasons stated *supra* with respect to the pat-down consent analysis, defendant's consent was voluntary. Defendant argues now that Deputy Marshal Alley "signaled" defendant to hand the satchel over to Deputy Marshal Alley. But the record does not establish that Deputy Marshal Alley ever made any signal. And in any event, the record here establishes that defendant does speak and understand some English and that he understood Deputy Marshal Alley's request in English for consent to search the satchel. Defendant therefore voluntarily consented to Deputy Marshal Alley's search of the satchel which disclosed the gun.

### III.

In summary, the evidentiary record makes clear (i) that the warrant task force possessed the requisite reasonable, articulable suspicion to stop the Ford Explorer driven by defendant, and (ii) that Deputy Marshal Alley's pat-down and eventual search of defendant's satchel was lawful, both because Deputy Marshal Alley had reason to believe that defendant was armed and dangerous

15

and because defendant consented to both the pat-down and the search of the satchel. Accordingly, defendant's Motion to Suppress (Dkt. 20) must be denied.

An appropriate Order will issue.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
December 21, 2022

T. S. Ellis, III
United States District Judge