# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Criminal No. 1:22-cr-180 |
| ) | |
| HERBERT MURILLO-LOPEZ, ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Following a two-day trial, a jury convicted defendant of the sole count in the Indictment charging defendant with unlawfully possessing a firearm and ammunition as an alien unlawfully present in the United States, in violation of 18 U.S.C. § 922(g)(5)(A). Defendant now renews his previously denied Motion for a Judgment of Acquittal, pursuant to Rule 29, Fed. R. Crim. P., on the ground that the government's evidence at trial was insufficient to support the jury verdict. Specifically, defendant, in his Motion, argues that the evidence at trial was insufficient to prove (i) that defendant was in possession of a "firearm," as that term is statutorily defined; (ii) that the firearm defendant possessed had travelled in interstate commerce; (iii) that defendant was unlawfully present in the United States; and (iv) that defendant was aware that he was unlawfully present in the United States. The government opposes defendant's Motion, arguing, as it did at trial, that the trial evidence was more than sufficient to sustain the jury's unanimous guilty verdict. Defendant's Motion for a Judgment of Acquittal has been fully briefed and is now ripe for disposition. A thorough review of the trial testimony and the pertinent law makes clear that defendant's renewed Motion for a Judgment of Acquittal must be denied; the trial evidence established beyond a reasonable doubt (i) that defendant was in possession of a firearm, as statutorily defined; (ii) that the firearm defendant possessed had travelled in interstate commerce;

1

(iii) that defendant was unlawfully present in the United States; and (iv) that defendant was aware that he was unlawfully present in the United States.

## I.

Defendant Herbert Murillo-Lopez was arrested following a lawful traffic stop, where officers determined that defendant was unlawfully present in the United States and found in his possession a Taurus G2C semiautomatic pistol containing 13 .40 caliber rounds in the magazine and one .40 caliber round in the chamber. On September 29, 2022, defendant was charged in a single-count Indictment alleging that he knowingly possessed a firearm transported in interstate commerce while knowing that he was an alien illegally and unlawfully present in the United States, in violation of 18 U.S.C. § 922(g)(5)(A). On October 6, 2022, defendant was arraigned on the Indictment, and a jury trial was set for November 15, 2022.

On October 20, 2022, defendant filed a Motion to Suppress the Taurus G2C semiautomatic pistol found in the cross-body satchel defendant was wearing, arguing that the Taurus G2C was uncovered as part of an unlawful search. First Motion to Suppress, *United States v. Murillo-Lopez* (No. 22-CR-180) (Dkt. 20). Specifically, defendant argued that the Deputy United States Marshals lacked the requisite reasonable, articulable suspicion to conduct the traffic stop and search defendant's bag for weapons. *Id.* On October 24, 2022, an Order issued scheduling an evidentiary hearing on the Motion to Suppress for November 18, 2022 and continuing the jury trial until January 10, 2023.

On November 18, 2022, an evidentiary hearing was held on the Motion to Suppress where Deputy Marshal Timothy Alley, the officer who arrested defendant, testified credibly and persuasively as to the circumstances of defendant's arrest. In this regard, Deputy Marshal Alley testified that, on August 24, 2022, he and other officers were seeking to execute an armed-robbery

arrest warrant for a man named Jose Torres Cruz, someone who they also believed to be a member of MS–13.[1]  In the course of surveilling residences on the street on which Cruz was thought to reside, Deputy Alley saw two or three people, one of whom matched Cruz's general physical description, exit from a location where Cruz was believed to reside in Sterling, Virginia and drive away in a Ford Explorer.  The Ford Explorer stopped at a 7-Eleven next to another vehicle: a Honda Accord; the five passengers of the Accord and the Explorer were moving freely between the vehicles.  Both vehicles then left the 7-Eleven and drove to a Sunoco gas station, where Deputy Alley conducted a traffic stop of the Explorer, which was driven by a person who matched Cruz's description.  It turned out that the driver of the Explorer was the defendant in this case.  Deputy Alley asked defendant if he had any identification, and defendant said "no."  Deputy Alley then observed that defendant was wearing a cross-body satchel, tightly affixed to defendant's body but sagging forward, indicating that it contained a heavy object.  Deputy Alley asked the defendant, in English, if he could pat down the satchel, and defendant replied, in English, "yes." [2]  In conducting a pat-down of the satchel, Deputy Alley felt a gun shaped object in the satchel, and then Deputy Alley asked for permission to search the satchel.  Defendant said "yes," and Deputy Alley searched the satchel and found a Taurus G2C.  Defendant was then arrested.

On December 21, 2022, A Memorandum Opinion and Order issued denying the Motion to Suppress.  *See United States v. Murillo-Lopez*, 2022 WL 17852778 (E.D. Va. Dec. 21, 2022) (Memorandum Opinion).  The Memorandum Opinion denying the Motion reasoned that Deputy Alley had reasonable, articulable suspicion to conduct the traffic stop because Deputy Alley saw

---

[1] A more thorough summary of the facts established at the evidentiary hearing is available at *United States v. Murillo-Lopez*, 2022 WL 17852778 (E.D. Va. Dec. 21, 2022) (Memorandum Opinion).

[2] Deputy Alley testified that he knew that defendant spoke English because Deputy Alley had asked defendant questions in English and defendant had consistently responded to those questions in English.  *Murillo-Lopez*, 2022 WL 17852778, at *7 (Memorandum Opinion).

the Ford Explorer leave from a place where Jose Torres Cruz was believed to reside and because the driver of the Explorer matched Cruz's general description. With respect to the search of the satchel, the Court concluded from the evidence that defendant had consented to the pat-down and to the search of the satchel, and that in any event, Deputy Alley possessed the requisite reason-to-believe that defendant might well be armed and dangerous because defendant may have been Cruz, a person wanted for armed robbery, and thus the pat down and search were reasonable even without consent. Accordingly, the Motion to Suppress was denied in full. *Murillo-Lopez*, 2022 WL 17852778, at *8.

Following the denial of the Motion to Suppress, a final pretrial conference was set for January 6, 2023. Late on January 5, 2023, defendant filed a Motion to Dismiss the Indictment, arguing that 18 U.S.C. § 922(g)(5) was unconstitutional in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Motion to Dismiss the Indictment, *United States v. Murillo-Lopez* (No. 22-CR-180) (Dkt. 50). Oral argument on that Motion was heard at the final pretrial conference on January 6, 2023. On January 9, 2023, an Order issued denying defendant's Motion to Dismiss the Indictment, noting, first, that defendant's Motion was untimely, and second, that defendant's argument that 18 U.S.C. § 922(g)(5) is unconstitutional was foreclosed by the Fourth Circuit's decision in *United States v. Carpio-Leon*, 701 F.3d 974, 975 (4th Cir. 2012), which held that 18 U.S.C. § 922(g)(5)(A) is constitutional. *United States v. Murillo-Lopez*, 22-CR-180 (E.D. Va. Jan. 9, 2023) (Order) (Dkt. 60).

On January 6, 2023, the Friday before the Tuesday on which trial was set to begin, defendant filed yet another Motion to Suppress, arguing that statements that defendant made while in immigration custody must be suppressed in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966). Second Motion to Suppress, *United States v. Murillo-Lopez* (No. 22-CR-180) (Dkt. 52).

Oral argument on that Motion to Suppress also occurred at the final pretrial conference on January 6, 2023. At oral argument, the government noted that the defendant knew of several of the at-issue statements before the motions deadline and chose not to challenge those statements as involuntary. But the government agreed not to seek testimony regarding the statements on Exhibit 1-C introduced at the pretrial conference, which it acknowledged were not provided to defendant before the motions deadline. Thus, on January 9, 2023, an Order issued denying defendant's Motion to Suppress in part as untimely, reasoning that defense counsel knew of several of the statements before the motions deadline and chose not to challenge the voluntariness of those statements until the eve of trial. *United States v. Murillo-Lopez*, 22-CR-180 (E.D. Va. Jan. 9, 2023) (Order) (Dkt. 59). The Order also denied as moot the remainder of the Motion to Suppress, noting that the government agreed not to offer the at-issue statements found on Exhibit 1-C introduced at the pretrial conference. *Id.*

On January 9, 2023—the day before trial—defendant filed a Motion in Limine seeking to exclude portions of defendant's Alien File. Motion in Limine, *United States v. Murillo-Lopez* (No. 22-CR-180) (Dkt. 63). Specifically, defendant sought to exclude allegations by immigration officials that defendant was in the United States unlawfully and references to defendant being in immigration custody, arguing that such evidence was irrelevant, pursuant to Rule 401, Fed. R. Evid, and prejudicial, pursuant to Rule 403, Fed. R. Evid. The parties argued the Motion orally before trial on January 10, 2023. A bench ruling denied the Motion with respect to the statements by immigration officials that defendant was unlawfully in the United States, as that evidence was plainly relevant. But the government was directed to eliminate reference to custody before offering the Alien File at trial. January 10, 2023 Trial Transcript (Dkt. 75) at 13-14. After all the untimely Motions were disposed of, the matter proceeded to jury selection and to trial.

On the first of two trial days, the Government elicited testimony from three witnesses, namely Timothy Alley, the Deputy Marshal who conducted the traffic stop; Detective Thomas Kevin Field, who was with Deputy Marshal Alley at the time defendant was arrested; and Immigration Officer John Parodi, who was called to the scene of defendant's arrest to verify defendant's immigration status.  Later, Officer Parodi—a native Spanish speaker—interviewed the defendant while the defendant was in immigration custody.

With respect to the firearm, the government introduced at trial the specific weapon that was found on defendant's person at the time defendant was arrested, namely, the Taurus G2C semiautomatic pistol.  Additionally, Detective Field, a detective present at the time defendant was arrested, stated that the weapon found in defendant's bag was a Taurus G2C semiautomatic pistol, and that there were 13 .40 caliber rounds in the magazine and one .40 caliber round in the chamber.  January 10, 2023 Trial Transcript at 141-42.  Detective Field also testified that he removed those rounds from the pistol, making the pistol safe so that it could be properly introduced into evidence and presented to the jury, as indeed it was.  *Id.*  Thus, not only was a photograph of that specific weapon provided to the jury, but the *actual weapon* was provided to the jury during jury deliberations, with adequate safeguards to prevent injury or accident.  And with respect to the interstate commerce element, the government relied on the engraving in the metal of the Taurus G2C that stated: "Made in Brazil."  The other side of the Taurus G2C also had an engraving etched into the metal of the pistol which read "Taurus Int'l Mfg Miami, FL – USA."

Finally, with regard to the requirement that defendant was an alien illegally and unlawfully in the United States, and that the defendant knew of his unlawful status, the government introduced a mountain of evidence.  Specifically, the government introduced evidence (i) that defendant, at the traffic stop where he was arrested, stated to Deputy Alley that he was not a citizen and that he

was not lawfully present in the United States[3]; (ii) that defendant was not carrying any government-issued identification at the time of his arrest[4]; (iii) that, as Officer Parodi testified, a biometric scan and search through federal immigration databases indicated that there was no record of defendant lawfully entering the United States[5]; (iv) that, as Officer Parodi testified, defendant stated when in immigration custody that he was born in San Miguel, El Salvador and was a citizen of El Salvador[6]; (v) that defendant refused to provide federal immigration officers with his father's address because defendant was concerned that answering that question would cause an immigration action against his father[7]; and (vi) that defendant then stated that his mother and father were citizens of El Salvador.[8]  Also introduced into evidence was defendant's Alien File[9], which Officer Parodi stated indicated no evidence of lawful entry into the United States.[10]  Had defendant entered the United States lawfully, the Alien File would reflect this fact.[11]  After the government rested, the defendant, by counsel, prevented no evidence and called no witnesses.  Outside of the jury's presence, the

---

[3] Although Deputy Alley initially testified that defendant responded "no" when Deputy Alley asked if defendant was in the country "illegally," Deputy Alley stated that he was getting "confused with all the terminology" and clarified that the question to which defendant responded "no" was whether defendant was in the United States "legally." January 10, 2023 Trial Transcript at 108-10.

[4] January 10, 2023 Trial Transcript at 89.

[5] January 10, 2023 Trial Transcript at 149-50.

[6] January 10, 2023 Trial Transcript at 156.

[7] January 10, 2023 Trial Transcript at 155.

[8] January 10, 2023 Trial Transcript at 156-57.

[9] Also worth noting is that several courts have concluded that a defendant's immigration file is admissible. *See United States v. Caraballo*, 595 F.3d 1214 (11th Cir. 2010) ("immigration files contained in an A–File, a category into which the I–213 form falls, constitute admissible hearsay . . . ."); *United States v. Medrano*, 356 F. App'x 102, 108-09 (10th Cir. 2009) ("We have repeatedly decided that ICE or INS files can be admissible as business records."); *United States v. Farah*, 475 F. App'x 1, 8-9 (4th Cir. 2007) (holding that immigration file documents kept by INS are admissible).

[10] January 10, 2023 Trial Transcript at 147-50.

[11] January 10, 2023 Trial Transcript at 147-50.

Court questioned the defendant to confirm that he had discussed with his counsel whether he wished to remain silent and confirmed that the defendant did not wish to testify. January 10, 2023 Trial Transcript at 172-76.

The morning before the second day of trial, defendant filed a Rule 29 Motion for Judgment of Acquittal, arguing that the evidence presented in the government's case was insufficient to prove that defendant possessed a *firearm* that had *traveled in interstate commerce*. Before the second day of trial, the Court heard oral argument and denied the Motion, noting, however, that the defendant could renew the Motion after trial should the jury return a guilty verdict. January 11, 2023 Trial Transcript (Dkt. 76) at 28. At the end of trial, the jury was instructed[12] and was allowed to retire to deliberate. Shortly thereafter, on the same day, the jury returned a guilty verdict.

Following the jury verdict, defendant filed a renewed Motion for Judgment of Acquittal pursuant to Rule 29, Fed. R. Crim. P, which is now at issue. Defendant argues, by counsel, that the government failed to satisfy its evidentiary burden with respect to each of the elements. Specifically, defendant argues (i) that expert testimony is needed to determine whether a weapon is a firearm; (ii) that the engraving etched into the metal of the gun that it was made in Brazil is hearsay, and was thus improperly admitted; (iii) that the evidence introduced at trial was insufficient to demonstrate that defendant was unlawfully present in the United States; and (iv) that the evidence introduced at trial was insufficient to demonstrate that defendant *knew* he was unlawfully present in the United States. The government opposes defendant's Motion, arguing that sufficient evidence on each element was introduced at trial. For the reasons that follow, defendant's motion must be denied.

## II.

---

[12] Defense counsel confirmed that the defendant had no objections to the instructions provided to the jury. *See* January 11, 2023 Trial Transcript at 92.

The standard governing disposition of a Rule 29 motion for judgment of acquittal is the well-settled test of "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982) (citing *United States v. Dominguez*, 604 F.2d 304, 310 (4th Cir. 1979); *United States v. Stroupe*, 538 F.2d 1063, 1066 (4th Cir. 1976)). Accordingly, the evidence must be sufficient to support a "reasonable inference" that each of the elements necessary for conviction is satisfied beyond a reasonable doubt. *Id.* at 474; see also *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) ("[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."). Thus, the evidence presented to the jury must have been sufficient to allow a jury to conclude beyond a reasonable doubt (i) that the defendant possessed a firearm; (ii) that the firearm traveled through interstate commerce; (iii) that defendant was unlawfully present in the United States; and (iv) that defendant knew he was unlawfully present in the United States.

### III.

#### A.

Defendant first argues that there was insufficient evidence at trial to demonstrate that defendant possessed a "firearm," as that term is defined by statute. In this regard, a weapon is a "firearm" if it (i) "will or is designed to or may readily be converted to expel a projectile by the action of an explosive" or (ii) is the "frame or receiver" of any such weapon. 18 U.S.C. § 921(a)(3). To prove that defendant possessed a firearm, the government at trial (i) introduced the firearm itself into evidence, which was exhibited to the jury and was made available to the jury for use in deliberations after being removed of ammunition; and (ii) elicited testimony from

Detective Field, a detective present at the time defendant was arrested, that the weapon found in defendant's bag was a Taurus G2C semiautomatic pistol, and that there were 13 .40 caliber rounds in the magazine and one .40 caliber round in the chamber. January 10, 2023 Trial Transcript at 141-42.

      Defendant argues that, despite this evidence, there was no way for the jury to determine whether the Taurus G2C admitted into evidence met the statutory definition of a firearm. In defendant's view, the government could have met its burden only by offering expert testimony that a Taurus G2C is a firearm. Defendant's argument in this regard is foreclosed by the Fourth Circuit's holding that "[t]he government need not present expert testimony to support" a finding that a gun is a firearm, as defined by statute. *Id.* at 460. The issue, in *Jones* and later in *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016), was whether eyewitness testimony that "a gun was used in [a] robbery" was sufficient for a jury to conclude that a "firearm," as defined by statute, was used in the offense of armed robbery. *Id.* at 149. Both in *Jones* and *McNeal*, the Fourth Circuit concluded that eyewitness testimony was sufficient, and that expert testimony was not required to sustain a finding that a firearm was used in the offense of armed robbery. *Jones*, 907 F.2d at 460; *McNeal*, 818 F.3d at 149; *see also Parker v. United States*, 801 F.2d 1382, 1385 (D.C. Cir. 1986) (Scalia, J.) ("there is little if any difference between the question whether [a defendant] used a gun and the question whether he used a 'weapon . . . which will . . . expel a projectile by the action of any explosive.'" (quoting 18 U.S.C. § 921(a)(3))). If, as in *Jones* and *McNeal*, a witness to an armed robbery can determine that a gun is a firearm, it follows *a fortiori* that jurors, when given more evidence and the opportunity to examine a gun, can also determine that a gun is a firearm.

      Nowhere does defendant acknowledge that his position that expert testimony is required is

10

foreclosed by binding circuit precedent. Instead, defendant argues that allowing a jury to determine whether a gun is a firearm is improper because some jurors may be completely unfamiliar with firearms and unable to determine if a gun is a firearm. But defendant's argument that a jury could determine that an object is a gun—by looking at it—but could not determine if it is a firearm lacks merit because whether an object is a gun and whether it is a firearm are similar inquiries. And defendant's argument that the Taurus G2C provided to the jury could have been a toy or fake gun is unpersuasive because, in addition to introducing the Taurus G2C itself into evidence, the government elicited testimony from Detective Field, a detective present at the time defendant was arrested, that the weapon found in defendant's bag was a Taurus G2C semiautomatic pistol, and that there were 13 .40 caliber rounds in the magazine and one .40 caliber round in the chamber. January 10, 2023 Trial Transcript at 141-42. This evidence allowed the jury to determine that the Taurus G2C was not a toy or fake gun since toy guns and fake guns are not loaded with real ammunition as the Taurus G2C was here. Especially given the fact that a jury need only determine that a gun is a firearm beyond a *reasonable* doubt, not beyond all possible doubt, there was more than sufficient evidence to support the jury's guilty verdict. Thus, the evidence at trial was sufficient to sustain the jury's conclusion that the gun possessed by defendant—a loaded Taurus G2C semiautomatic pistol—was a firearm.

## B.

Next, defendant argues that the government did not present sufficient evidence to sustain the jury's conclusion that the firearm had traveled in interstate commerce. This argument is also meritless. At trial, the government introduced the firearm itself which contained an engraving "Made in Brazil" etched into the metal of the Taurus G2C.[13] Defendant, however, argues (i) that

---

[13] The other side of the firearm also contained an engraving etched into the metal reading "Taurus Int'l Mfg Miami, FL – USA."

the engraving on the firearm is inadmissible hearsay, and (ii) even if admissible, the engraving "Made in Brazil" on the firearm is not sufficient to prove beyond a reasonable doubt that the firearm was, in fact, made in brazil. Neither argument is persuasive.

First, defendant argues that the gun's engraving etched into the metal of the firearm reading "Made in Brazil" is inadmissible hearsay. In this regard, defendant argues that the statement is an out-of-court statement made by the manufacturer of the gun offered for the truth of the matter asserted, namely, that the gun was in fact made in Brazil.

To begin with, several circuits have rejected this argument. In *United States v. Thody*, 978 F.2d 625 (10th Cir. 1992), the defendant argued that a gun's engraving that it was "Made in Spain" was inadmissible hearsay and thus could not support a finding that the weapon traveled in interstate commerce. *Id.* at 630-31. The Tenth Circuit rejected this argument, concluding that "the manufacturer's imprint in the gun is not hearsay" because it is "not an assertion by a declarant as contemplated by" the hearsay rules. *Id.* at 631. The Ninth Circuit has also concluded that an engraving in the metal of a firearm that read "Garnika, Spain" was admissible and not hearsay. *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1992), *overruled on other grounds by Kawashima v. Mukasey*, 530 F.3d 1111 (9th Cir. 2008). In holding that such engravings were admissible, the Ninth Circuit noted that Wigmore's treatise on Evidence described such engravings as "mechanical traces," designed to demonstrate an object's origin. *United States v. Snow*, 517 F.2d 441, 443 (9th Cir. 1975) (citing 1 Wigmore on Evidence § 148 (3d ed. 1940)). In the later *Alvarez* case, the Ninth Circuit also reasoned that Rule 902(7), Fed. R. Evid., provides that an "inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control" is self-authenticating, suggesting that the drafters of the Federal Rules of Evidence considered such evidence to be a trace of origin rather than a hearsay

statement. *Alvarez*, 972 F.2d at 1004. Similarly, the Eighth Circuit has held that a manufacturer's engraving on a firearm was admissible to prove the interstate commerce element of federal firearm offenses. *See United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010) (citing *United States v. Bowling*, 32 F.3d 326, 328 (8th Cir. 1994)). Indeed, no circuit has accepted defendant's argument that an engraving etched into the metal of a firearm is inadmissible hearsay.

Relying on the reasoning of the Eighth, Ninth, and Tenth Circuits, Judge Doumar in this district "agree[d]" with those courts that "[i]t makes much more sense to think of" an engraving on a product "as circumstantial evidence" of where that product was made and "not as a statement made by the company . . . subject to hearsay rules." *United States v. Scott*, 2014 WL 2808802, at *4 (E.D. Va. 2014).

The reasoning of the Eighth, Ninth, and Tenth Circuits, as well as the reasoning in Judge Doumar's opinion, is persuasive here.[14] Those courts considered the precise question here, namely whether an engraving on an object is admissible. And those courts all concluded that such an engraving is admissible. As the Ninth Circuit observed, the Federal Rules of Evidence are not silent with respect to engravings reflecting an object's origin or place of manufacture. The Federal Rules of Evidence provide that an "inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control" is self-authenticating. Rule 902(7), Fed. R. Evid. The drafters of the Rules of Evidence recognized that engravings like the one here, that specify the origin of an object, are reliable enough such that "the possibility of fraud,

---

[14] Although the Fourth Circuit has not *decided* whether firearm engravings etched into the metal of the firearm are admissible, it has *suggested* that such engravings are admissible. Specifically, in *United States v. Roy*, 881 F.2d 1070 (4th Cir. 1989) (unpublished table decision), the Fourth Circuit reversed the defendant's conviction for possessing a firearm after prior conviction of a felony because the record contained insufficient evidence of the firearm having traveled through interstate commerce. In support of that result, the Fourth Circuit noted that the record did not "reflect that the place of manufacture was stamped on the gun." *Id.* Given this statement, it is appropriate to infer that the Fourth Circuit likely would have concluded that an engraving on a firearm was admissible and sufficient to prove the requisite interstate commerce nexus.

13

forgery, and misattribution" of that evidence "is so slight." *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982). Put simply, the fact that Rule 902(7), Fed. R. Evid., provides that engravings that specify the origin of an object are self-authenticating indicates that the drafters believe such engravings are reliable. But the purpose for the hearsay exclusion is the "unreliability of hearsay" evidence. *See*, *e.g.*, 2 McCormick on Evid. § 245 (8th ed.). Defendant's argument that engravings that specify the origin of an object are unreliable and must be excluded pursuant to the hearsay rules is thus in fundamental tension with Rule 902(7), Fed. R. Evid., which suggests that such engravings are reliable. Accordingly, as Rule 902(7) itself indicates, engravings etched into the metal of a firearm are too reliable to be classified as hearsay.

Defendant points to the First Circuit's decision in *United States v. Burdulis*, 753 F.3d 255 (1st Cir. 2014), for the proposition that firearm engravings are inadmissible hearsay. Defendant is incorrect; *Burdulis* did not hold that firearm engravings are inadmissible hearsay. Instead, that decision merely "accept[ed] for purposes of analysis [the defendant's] claim that" such engravings are hearsay. *Id.* at 263. The *Burdulis* Court then went on to hold that, even if such engravings are hearsay, they are admissible pursuant to Rule 807, Fed. R. Evid. *Id.* Thus, although the First Circuit relied on Rule 807, Fed. R. Evid., it nonetheless concluded that engravings on a firearm are admissible. Defendant's citation to an out-of-circuit district court case—*United States v. Pina*, 190 F. Supp. 3d 748 (S.D. Ohio 2016)—is similarly unavailing. That decision, concerning a computer label that read "Made in China," concluded that labels on products are hearsay, but admitted such statements under the residual exception of Rule 807, Fed. R. Evid. *Id.* at 752. Thus, the authorities cited by defendant are not persuasive.

Next, defendant argues that the "Made in Brazil" engraving in the Taurus G2C is insufficient to support the jury's conclusion that the firearm was made in Brazil; defendant argues

14

that expert testimony is required. This argument strains credulity. As the Ninth Circuit recognized in *United States v. Patterson*, 820 F.2d 1524 (9th Cir. 1987), the fact that a handgun contains an imprint of origin is sufficient to establish the interstate commerce nexus. *Id.* at 1526.

In sum, the "Made in Brazil" engraving etched into the firearm here was properly admitted and provided a sufficient basis for the jury's conclusion that the firearm traveled in interstate commerce.

C.

Defendant next argues that the evidence at trial is insufficient to support a reasonable inference that defendant was in the United States unlawfully. Specifically, although defendant acknowledges that his statements to immigration officials amount to a confession that he was in the United States unlawfully, defendant notes that the Fourth Circuit has held that a defendant's confession of an element of a crime is not enough; the government is required to "present sufficient independent evidence that a crime was committed." *United States v. Rodriguez-Soriano*, 931 F.3d 281, 287 (4th Cir. 2019).

The fatal flaw in defendant's argument is that more than sufficient corroborating evidence was introduced at trial. To begin with, Officer Parodi—a federal agent employed by Immigration and Customs Enforcement ("ICE")—testified that he ran defendant's fingerprints through ICE's immigration databases, and there was no record of defendant having any lawful status in the United States. Indeed, Officer Parodi noted that, had defendant entered the United States lawfully through a port of entry, federal databases would contain an entry documenting the lawful entry, which was missing from the database here. And Officer Parodi also testified that defendant had no passport or visa on his person. January 10, 2023 Trial Transcript at 147-48. Moreover, defendant's Alien File was introduced.

Although the parties point to no Fourth Circuit case considering precisely the amount of evidence required to demonstrate that a defendant is in the United States illegally, the Tenth Circuit has considered this precise question. The Tenth Circuit concluded that a jury can reasonably conclude that a defendant is unlawfully present in the United States where (i) the defendant, as here, admits that he was born abroad; (ii) the defendant, as here, provides no lawful American identification; and (iii) as here, the government lacks any evidence of the defendant's valid authorization to enter the country lawfully. *United States v. Mendez*, 514 F.3d 1035, 1042-43 (10th Cir. 2008). Those same facts were present here: defendant admitted he was born abroad in El Salvador; defendant provided no identification; and the government found no evidence of the defendant's valid authorization to lawfully enter the country. In sum, there was ample evidence to prove beyond a reasonable doubt that defendant was in the United States unlawfully.

### D.

Defendant also argues that the trial evidence does not demonstrate that defendant *knew* he was in the United States unlawfully. In this regard, although the government was obligated to prove that the defendant knew he was unlawfully present in the United States, the Supreme Court has made clear that this obligation is not to be "burdensome." *Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019). Indeed, the Supreme Court has made clear "knowledge can be inferred from circumstantial evidence." *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994). Thus, the government needs only some circumstantial evidence to allow for an inference of scienter. *See also United States v. Mabry*, 953 F.2d 127, 130 (4th Cir. 1991) ("a little evidence is sufficient to uphold a District Court's denial of a motion for acquittal.").

Here, more than sufficient evidence supports the jury's finding that defendant knew that he was unlawfully present in the United States. Indeed, the defendant told Deputy Marshal

Alley—the officer who arrested defendant—that defendant was not in the United States legally. And the defendant told ICE Officer Parodi that defendant was born in El Salvador, that his parents were born in El Salvador, and that he was hesitant to answer questions for fear that his answers may have adverse effects on some immigration issue. And the government introduced "sufficient independent evidence" beyond defendant's confessions to demonstrate that defendant knew he was in the United States unlawfully. *See United States v. Rodriguez-Soriano*, 931 F.3d 281, 287 (4th Cir. 2019) (noting that corroborating evidence beyond a confession is required to sustain a conviction). Officer Parodi—a federal agent employed by ICE—testified that he gave defendant a notice to appear, a document charging defendant with the immigration offense of unlawful entry. At this point, defendant did not express any confusion as to the reason that he was being placed in the system to be removed. January 10, 2023 Trial Transcript at 159. Nor did the defendant make any claim of the notice to appear being made in error. And the defendant did not make any claim to being in the United States lawfully. January 10, 2023 Trial Transcript at 159. These facts, taken together with the fact that the defendant stated he was illegally in the United States, were sufficient for a jury to conclude that defendant knew he was in the United States illegally. Defendant's argument to the contrary is therefore unpersuasive.

## IV.

In conclusion, defendant's arguments—that the evidence at trial was insufficient to prove (i) that defendant was in possession of a firearm; (ii) that defendant was in possession of a firearm that travelled in interstate commerce; (iii) that defendant was unlawfully present in the United States; and (iv) that defendant was aware that he was in the United States unlawfully—are unpersuasive. There was ample evidence for a jury to conclude beyond a reasonable doubt that defendant was guilty of being an unlawful alien in possession of a firearm. Defendant's renewed

Motion for Judgment of Acquittal must therefore be denied.

The Clerk is directed to send this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

Alexandria, Virginia
April 5, 2023

T. S. Ellis, III
United States District Judge

18